**Arnaldo MORALES–NARVÁEZ, et al., Plaintiffs,**

v.

**Hon. Pedro J. ROSSELLO, et al., Defendants.**

**Civ. No. 93–1960 GG.**

United States District Court, D. Puerto Rico.

May 16, 1994.

Saldaña, Rey & Alvarado, Manuel Alvarado, Santurce, PR, for plaintiffs.

Ana L. Torres, Aida Medina, Reinaldo Babilonia, San Juan, PR, for defendant Puerto Rico Com. Ass'n.

Dominguez & Totti, Jorge C. Pizarro, San Juan, PR, for defendant Pedro J. Rossello.

Pedro R. Pierluisi, Atty. Gen., Mayra Maldonado Colon, Acting Director, Federal Litigation Div., Dept. of Justice, San Juan, PR, for defendants Alvaro Cifuentes, Henry F. Gonzalez, Michael Forte.

## OPINION AND ORDER

GIERBOLINI, Senior District Judge.

### I. Introduction and Facts

Plaintiffs have filed an action under 42 U.S.C. §§ 1983, 1985(3), and 1986 against the Honorable Pedro J. Rossello, Governor of the Commonwealth of Puerto Rico, Alvaro Cifuentes, Secretary of the Governorship, Henry F. González, Special Aide to the Governor in Charge of Administration, and Michael Forte, Personnel Director of the Office of the Governor, in both their official and individual capacities, alleging that defendants conspired to violate their constitutional rights under the Due Process Clause of the Fifth and Fourteenth Amendments and their right to free association under the First Amendment. Specifically, the plaintiffs allege that they were transferred from their former positions to their current positions based only on their political affiliation. Plaintiffs are members of the Popular Democratic Party (PDP). The Governor, on the other hand, is a member of the New Progressive Party (NPP). Plaintiffs request compensatory and punitive damages, and reinstatement to their former positions in the Contracts Office in the Governor's Office. Presently under consideration in this Opinion and Order is plaintiffs' motion for a preliminary injunction seeking reinstatement to their former positions and an order prohibiting the removal of plaintiff Arnaldo Morales–Narváez as a delegate to

the Puerto Rico Commonwealth Employees Association and as a member of the Board of Directors of that Association.

From the record we find the following facts. All of the plaintiffs worked in the Contracts Office in the Governor's Executive Mansion. The transfers the plaintiffs challenge occurred after the Hon. Pedro Rossello won the election for Governor in November 1992. Soon after taking office, the Governor issued Administrative Bulletin/Executive Order 1993–04, which established a public policy of austerity. In a Memorandum of February 4, 1993, the Governor granted Attorney Alvaro Cifuentes, Secretary of the Governorship, the discretion to reject any governmental contract for professional or consultant services of any public agency after evaluation of the contract "in order to execute the policy of austerity promulgated." Before Executive Order 1993–04 was signed, the Contracts Office only handled maintenance, gardening, supply, entertainment, and other similar contracts entered into by the Executive Mansion. The Executive Order assigned to the Contracts Office the new duties of evaluating and approving all professional and consultant service contracts of all government agencies of the Commonwealth of Puerto Rico.

Plaintiff Arnaldo Morales–Narváez worked under the Secretary of the Governorship as a contract analyst. The other plaintiffs were secretaries in the Contracts Office. The parties disagree as to the classification of the plaintiff's positions under the Puerto Rico classification system. The defendants claim that all of the plaintiffs held confidential posts, while the plaintiffs claim that they all held career positions. Neither party has provided any evidence concerning the civil service classification of their former positions. For purposes of this Opinion and Order, we will assume that co-plaintiffs Morales–Narváez and Rosa I. Ortega–Torres were career employees at the time of the transfers. The third plaintiff, Isabel Martínez–Camacho, was a confidential employee, who had formerly been a career employee. *See Pls.' Reply to Opp'ns to the Prelim. Inj., pp. 9–11.*

Ostensibly based on the needs of the governmental programs involved, all of the plaintiffs were transferred from the Contracts Office to the Consejo para el Mejoramiento de la Calidad de Vida en Areas Urbanas y sus Recursos Entretegidos con Dedicacion (Council for the Improvement of Urban Life) (hereinafter "RED"), another office in the Executive Mansion on March 31, 1993. RED was itself transferred to the Housing Department pursuant to Executive Order BA–OE# 1993–11, signed on March 8, 1993, which provides that transferred personnel would maintain the same rights and benefits which they had at the time of the transfer.

## II. Preliminary Injunction Standard

In deciding a motion for a preliminary injunction, the standard is a familiar one. The court will weigh the following factors:

1) the probability that plaintiffs will succeed on the merits;

2) the possibility that the movant will experience an irreparable injury if the injunction is not granted;

3) whether the potential injury to the plaintiffs outweighs any potential injury to defendants; and

4) whether the public interest will be adversely affected by granting the injunction.

*Narragansett Indian Tribe v. Guilbert,* 934 F.2d 4, 5 (1st Cir.1991); *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). Of these factors, the First Circuit has emphasized the paramount importance of the plaintiffs' likelihood of success on the merits. *Weaver v. Henderson,* 984 F.2d 11, 12 (1st Cir.1993). In this action, we have not conducted a hearing because the parties have had a fair opportunity to present relevant facts and arguments to the court. *See Aoude v. Mobil Oil Corp.,* 862 F.2d 890, 893–94 (1st Cir.1988). After reviewing the factors listed above, we deny plaintiffs' motion for a preliminary injunction.

After reviewing the facts as alleged by the plaintiffs and the briefs submitted by both parties, we deny plaintiffs' motion for a preliminary injunction, finding that 1) plaintiffs have not shown a likelihood of success on the merits on any of their claims; 2) plaintiffs have not shown irreparable injury from a

denial of a preliminary injunction; and 3) the harm caused the plaintiffs from denying a preliminary injunction does not outweigh the potential harm caused to the government. We explain our decision below.

## III. Likelihood of Success on the Merits

### A. The First Amendment Claim

#### 1. The Law

##### a. Employment Discrimination on the Basis of Political Affiliation—Political Affiliation as an Appropriate Job Requirement

■ The First Amendment forbids government officials from discharging, promoting, transferring, recalling, or hiring public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Therefore, the threshold question in this case is whether party affiliation is an appropriate requirement for the plaintiffs' Contract Analyst and secretarial positions.

■ In answering this question, we will look at the positions as newly reconstituted after the Governor instituted his austerity program. The First Circuit has set out a two step test to determine whether party affiliation is an appropriate job requirement. We will consider 1) whether the agency employing the plaintiffs handled matters potentially subject to partisan political differences and 2) how the plaintiff's position influenced the resolution of such matters. *See Jimenez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 241–42 (1st Cir.1986), *cert. denied,* 481 U.S. 1014, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987) and *Mendez–Palou v. Rohena–Betancourt,* 813 F.2d 1255, 1257–58 (1st Cir.1987). To answer the second question we will "examine the particular responsibilities of the position to determine whether the employee in the position resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is

such that party affiliation is an equally appropriate requirement." *Jimenez Fuentes,* 807 F.2d at 242; *see also Mendez–Palou,* 813 F.2d at 1258; *Serrano Caraballo v. Roman Hernandez,* 744 F.Supp. 389, 392 (D.Puerto Rico 1990).

■ We must also take into account that the First Circuit has found a "confidential employee" exception to the *Elrod–Branti* protection against politically motivated discharges. Specifically, there may be "public employees who occupy positions of such unusually intimate propinquity relative to government leaders that, despite their noninvolvement with partisanship and policymaking, political loyalty could be deemed an appropriate requirement of the job for purposes of muzzling the *Elrod–Branti* watchdog." *Vazquez Rios v. Hernandez Colon,* 819 F.2d 319, 324 (1st Cir.1987); *see also Santiago Correa v. Hernandez Colon,* 835 F.2d 395, 397 (1st Cir.1987). Of particular importance is the question whether the employees' positions intrinsically allow them ready access to sensitive political information and place them in a confidential position in relation to policymakers or the policymaking process. *Vazquez Rios,* 819 F.2d at 324. If party affiliation is an appropriate requirement for the job, persons holding those jobs have no constitutional protection from patronage dismissals, hiring, transfers, or other employment decisions under *Rutan, Elrod,* or *Branti.*

#### b. *Agosto-de-Feliciano* Standard and Defenses

■ We will also address the various burdens and defenses plaintiffs must contend with under *Agosto-de-Feliciano v. Aponte-Roque,* 889 F.2d 1209 (1st Cir.1989). Plaintiffs must meet the severity of harm and discriminatory animus showing requirements of *Agosto-de-Feliciano.* The plaintiffs must show by clear and convincing evidence that the positions to which they were transferred are unreasonably inferior to the positions they formerly held. *Id.,* at 1220. The court will inquire into the specific ways in which the plaintiff's job has changed to determine whether the new job is unreasonably inferior

to the one previously held. *Id.*, at 1218, 1220. And they must show, by a preponderance of the evidence, that the changes in the employees' work situation were motivated by discrimination on the basis of political affiliation.

■ On the other hand, defendants may claim "but for" and "changeover" defenses. In this regard, defendants can show that the changes in the plaintiffs' work situations would have been made regardless of political affiliation. They could also assert a changeover defense which requires courts to show some deference to the government's explanation of how personnel changes made shortly after it assumed power fit into its overall policy objectives. Shift in duties based on political affiliation could be proper where the employer can show a reasonable basis for believing that such an employee would likely be more helpful in implementing the new policies than an employee who is a member of an opposing political party. *Id.*, at 1221. "So long as the government is able to provide a substantive reason for its decision that is supported by the facts in the record, the government will be able to justify its actions with the changeover defense." *Id.*, at 1222.

## 2. Discussion

### a. Political Affiliation as a Job Requirement

The plaintiffs have not shown a likelihood of success on the merits as to their First Amendment claim. It can hardly be questioned that the Office of the Governor handles matters subject to partisan political differences. The Office of the Governor exercises broad powers in the implementation of the newly-elected administration's austerity policy, a politically sensitive mission. All the plaintiffs worked in the Contracts Office attached to the Secretariat of the Governorship. The Governor instituted an austerity program which included a program of contract review designed to reduce expenses by reducing the work contracted out to consultants. This austerity plan may clearly be the subject of partisan political differences.

As stated above, in addressing the impact of the plaintiffs' positions on politically sensitive matters, we will delve into the duties adhering to the positions. Although the plaintiffs are seeking a preliminary injunction and therefore have the burden of showing a likelihood of success on the merits, they have not provided the court with detailed job descriptions of their former and present positions despite having ample opportunity to do so. They claim that the defendants must provide those job descriptions. But they fail to realize that in moving for a preliminary injunction, they bear the burden of showing a likelihood of success on the merits. They could easily have met this burden since the Personnel Regulations of the Governor's Office (hereinafter "Regs.") provide that employees receive a copy of the job description. Regs., Art. 7, Sec. 7.1. The absence in the record of detailed job descriptions hampers our ability to explore the details of the plaintiffs' duties so as to determine if their positions have an influence on the resolution of partisan political concerns. Nevertheless, the record provides enough of a picture of the plaintiffs' duties to permit us to decide the motion for a preliminary injunction.

Based on the record as it exists, we find that the plaintiffs' positions either relate to partisan political concerns or manifest unusual propinquity to political officials such that political affiliation is an appropriate requirement. Specifically we find that political affiliation is an appropriate job requirement for the newly constituted Contract Analyst position. In addition, we find that the secretarial positions were positions of unusual intimate propinquity so as to fall into the First Circuit's exception to the *Elrod* line of protection for politically motivated transfer decisions. We will discuss the positions of each plaintiff in turn.

### (1) Arnaldo Morales–Narváez

■ The defendants have presented no proof to support their claim that co-plaintiff Arnaldo Morales–Narváez's position is a policy-making one. The defendants indicate that in recommending the approval of contracts proposed by the Department of Education, Morales–Narváez quoted a public policy goal from the New Progressive Party's "Program for Government." But Morales–Narváez played no role in establishing the policy; he

merely quoted it. The Department of Education may decide to encourage "community based" education as a matter of public policy. A person who quotes the expression of that public policy does not become a policymaker by doing so.

Nevertheless, while the contract analyst position may not be a policy-making one, we find that it is a policy implementing position. And as the Supreme Court has stated "[p]olicy implementation is just as important as policymaking." *Branti v. Finkel*, 445 U.S. at 530, 100 S.Ct. at 1301. There is no question that by participating in the approval of professional and consultant service contracts, plaintiff Morales–Narváez participated in the implementation of the government's austerity program.

■ Plaintiff Morales–Narváez asserts that because he is a career employee party affiliation is not an appropriate job requirement. But even if all the plaintiffs hold career positions, we do not agree that political affiliation is therefore not an appropriate job requirement. The First Circuit has indicated that a legislature's classification system for civil service positions is entitled to some deference. But at the same time, it has stated that the classification system is not determinative of the *Elrod–Branti* question. *Jimenez Fuentes*, 807 F.2d at 246. In *Aviles–Martinez v. Monroig*, 963 F.2d 2, 4 (1st Cir.1992), the First Circuit stated that the plaintiffs in that case held " 'career positions,' meaning that the employee can be removed only for cause, . . ., and that party affiliation is therefore not an appropriate job requirement." But in the case of plaintiff Morales–Narváez a distinction exists between a career position and a career employee. The plaintiff may be a career *employee*, but the question remains whether the contract analyst position as newly reconstituted is a career *position*. Again, neither party has addressed this issue.

The newly devised contract analyst position purportedly includes responsibilities that extend to matters that are not merely politically-neutral or technical. *Compare De Choudens v. Government Development Bank of Puerto Rico*, 801 F.2d 5, 9–10 (1st Cir. 1986) (grant of preliminary injunction affirmed where plaintiff's position did not entail responsibilities relating to partisan objectives, but only politically-neutral, technical, and professional matters), *cert. denied sub nom. Government Development Bank of Puerto Rico v. de Choudens*, 481 U.S. 1013, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987). The contract approval and evaluation process entails public policy considerations. A contract analyst, in deciding to recommend the approval or disapproval of consultant contracts, has direct input into the implementation of the Governor's austerity program. The governing political party's ideological orientation on economic issues can affect decisions made by employees in implementing the Governor's programs. An employee of a differing political ideology, for example, could decide that the governor's insistence on austerity places too great a burden on the employment of consultants who had been employed by the previous administration's government. This consideration could potentially influence the contract analyst's recommendation whether to enter into, terminate, or continue consultant contracts which in turn would effect the implementation of the government's austerity plan. Therefore, Morales–Narváez's position offers considerable opportunity to effectuate or to hinder the implementation of the Governor's austerity program vis-a-vis contract review and approval.

The fact that Morales–Narváez's decisions are not final, but are recommendations to his superiors, does not change the fact that his superiors may depend heavily on his recommendations. Morales–Narváez's position intrinsically places him in a confidential position relative to policy makers and policy making process, with access to sensitive information. Therefore, we find that Morales–Narváez's position is one which involves partisan political concerns for which party affiliation is an appropriate requirement. *Compare Fontane–Rexach v. Puerto Rico Elec. Authority*, 878 F.2d 1493, 1496 (1st Cir.1988) (denial of summary judgment affirmed where party affiliation was not an appropriate job requirement for assistant supply chief's job); *Collazo Rivera v. Torres Gaztambide*, 812 F.2d 258 (1st Cir.1987) (reversing grant of preliminary injunction because plaintiffs failed to

show a likelihood of success on the merits because plaintiff's position, Regional Director of Rural Housing Administration, was one in which party affiliation was an appropriate requirement); and *Vazquez Rios*, 819 F.2d at 321–26 (cleaning women, waiters, and supervisor of domestic services at Governor's executive mansion performed functions which were solely technical in character, which did not concern matters of partisan political interest, or unusual intimate propinquity to Governor so that they were protected against politically motivated discharge).

### (2) Isabel Martínez–Camacho and Rosa I. Ortega–Torres

 The secretarial positions of co-plaintiffs Ortega and Martínez are not policymaking positions. But the "bottom line is that policymakers, and those who work in ongoing and intimate proximity to them, cannot reasonably expect *Elrod–Branti* insulation in their fundamentally political jobs." *Vazquez Rios*, 819 F.2d at 325. In *Vazquez Rios*, the First Circuit held that an employee holding the position of Executive Secretary III in the governor's Office of Cultural Affairs performed duties which implicated partisan political concerns that "overbalance[d] for *Elrod–Branti* purposes the technical duties which the post also requires." Therefore, the Court held that party affiliation was an appropriate job requirement and the secretary did not enjoy the protections of *Elrod–Branti*. The First Circuit has also stated that personal secretaries may be confidential employees who public officials may fire because of political affiliation. *Santiago Correa*, 835 F.2d at 397, *citing Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 288 (7th Cir.1985).

The First Circuit has indicated that the proper inquiry is whether the position in question places an employee intrinsically, not incidentally, in a confidential position relative either to policymakers or the policymaking process. *Vazquez Rios*, 819 F.2d at 325. Despite having the opportunity to do so, the plaintiff secretaries did not provide job descriptions detailing their duties and responsibilities to allow us to determine if they involved partisan political concerns so that po-

litical affiliation would be an appropriate job requirement.

### b. *Agosto de Feliciano*

In addition to failing to show a violation of their First Amendment rights under *Rutan*, the plaintiffs have not shown that they have a likelihood of success on the merits under *Agosto-de-Feliciano*. The force of *Agosto-de-Feliciano* as precedent has been called into question by *Rutan*. But the First Circuit has not overruled the case. The plaintiffs' assertion that *Agosto-de-Feliciano* does not apply to discriminatory decisions regarding transfers because *Rutan* applies to transfers is without merit. They cite *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 706 (1st Cir.1993), to support that assertion. But *Nereida–Gonzalez* merely states that demotions fall within the ambit of *Rutan*'s prohibition against discriminatory employer actions when political affiliation is *not* an appropriate job requirement. In that sense, *Nereida* merely restates an aspect of the *Rutan* decision.

We have already determined that in the case of Morales–Narváez, political affiliation was an appropriate job requirement. And that plaintiffs Martínez and Ortega's positions may fall under an exception to the protection provided by the *Elrod–Branti* line of cases. But because *Agosto-de-Feliciano* is still good law and binding upon us, we will proceed to analyze the facts of this action under the standard provided by that case.

### (1) Severity of Harm

 We find that the plaintiffs fail to meet the severity of harm standard set out in *Agosto-de-Feliciano*. The plaintiffs have not shown that their transfers were to unreasonably inferior positions. In their motion for a preliminary injunction, the plaintiffs make no assertion of unreasonable inferiority. Even when granted an opportunity to respond to the defendants' opposition to the preliminary injunction, the plaintiffs again failed to show that their current positions are unreasonably inferior. *Compare Rodriguez Pinto v. Tirado Delgado*, 798 F.Supp. 77, 81 n. 2 (D.Puerto Rico 1992) (transfer was not shown by clear and convincing evidence to satisfy "severity of harm" standard; employee did not produce detailed description to permit court

to compare former and current positions), *aff'd in part, rev'd in part,* 982 F.2d 34 (1st Cir.1993).

Morales–Narváez's only contention in this regard is that in his new position he will no longer be a delegate to the employee union to which he was a delegate as an employee of the Contracts Office. But the loss of this role or function is not sufficient to meet the unreasonably inferior criteria. Morales–Narváez's role as a union delegate was only incidentally, not directly related to his position as a contract analyst. Therefore, this change alone does not qualify his new position as unreasonably inferior. In addition, it is important to note that Executive Order BA–OE# 1993–11 which transferred the RED Program to the Housing Department provides that transferred personnel would maintain the same rights and benefits which they had at the time of the transfer. *Compare Zayas Rodriguez v. Hernandez,* 748 F.Supp. 47 (D.Puerto Rico 1990) (involuntary job transfers suffered by career employees of Puerto Rico Highway Authority, allegedly taken because of their political affiliation, were not sufficiently harmful to rise to a First Amendment violation; employees' civil service rank and salary were unchanged).

### (2) But For Test

The defendants claim that they have a "but for" defense for Morales–Narváez's transfer pursuant to *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Agosto-de-Feliciano,* 889 F.2d at 1220. They claim that Morales–Narváez was transferred because his level of education and training were not sufficient to fulfill the requirements of the contract analyst position, the responsibilities of which the Governor's Executive Order had substantially changed. Instead of reviewing contracts merely for technical requirements, the contract analyst now makes decisions concerning the best way to integrate contracting for consultants with the Governor's austerity plan. Supposedly, Morales–Narváez does not possess the skills to accomplish this task.

The defendants do not allege that Morales–Narváez could not do his job, but that someone else could have performed it better.

The defendants have not presented a convincing "but for" defense against Morales–Narváez. The defendants do not allege any "but for" defense against plaintiffs Isabel Martínez–Camacho and Rosa I. Ortega–Torres.

### (3) Changeover Defense

The changeover defense definitely weighs against plaintiffs' likelihood of success on the merits. Defendants allege that the changes in Morales–Narváez's plaintiffs' positions were a direct consequence of the implementation of the newly-established policies," which changed the character of the contract analyst position and resulted in a reorganization, transferring RED to the Housing Department. There is no evidence in the record that reveals the reorganization to be anything but bona fide, and not a sham one. *Compare Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576 (showing that plaintiff was a legitimate casualty of a bona fide reorganization is a cognizable employer defense) and *Nereida–Gonzalez,* 990 F.2d at 706 (because factfinder could reasonably conclude that plaintiff was transferred on the premise of a sham reorganization grant of summary judgment was not proper).

### B. Due Process Claim

■ The plaintiffs claim that the defendants violated their procedural due process rights because they were not informed of the reasons for their transfers, they were arbitrarily transferred to another government agency, and they were not given thirty days advance notice of the transfers. We find that the plaintiffs have not shown a likelihood of success on the merits as to their due process claim.

■ Under Puerto Rico law a career employee has a constitutionally protected property interest in continued employment. *Rivera–Ruiz v. Gonzalez–Rivera,* 983 F.2d 332 (1st Cir.1993); *Acevedo–Diaz v. Aponte,* 1 F.3d 62 (1st Cir.1993) (lack of a property interest in employment positions generally precludes due process claims for a discriminatory dismissal); *Perkins v. Board of Directors of School Administrative Dist. No. 13,* 686 F.2d 49 (1st Cir.1982) (employee who

can be removed only for "cause" has constitutionally protected "property" interest, while employee whose job is held "at will" does not); *Rodriguez Pinto,* 798 F.Supp. at 83. Career employees can only be fired for good cause. *Kauffman v. Puerto Rico Telephone Co.,* 841 F.2d 1169, 1173 (1st Cir.1988). If a career employee is fired, due process requires that they receive a pretermination hearing. *Maldonado Agueda v. Montalvo,* 826 F.Supp. 47 (D.Puerto Rico 1993), *citing Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 538–47, 105 S.Ct. 1487, 1491–96, 84 L.Ed.2d 494 (1985).

But the above is small comfort to the plaintiffs because they have not been fired; they have been transferred. In the context of transfers, we must distinguish between a right of career employees to continued employment and a right to continued employment in the same position. The plaintiffs have presented no legal authority to indicate that the latter asserted right exists at all. *Compare Zayas Rodriguez,* 748 F.Supp. at 55–56 ("[P]laintiffs must point to some substantive rule under the law of Puerto Rico which would give them a property interest in their specific job (protecting against transfer to a job at the same level and salary), and then supply facts to support the contention that they were deprived of that interest in a manner inconsistent with due process.").

The cases we have found go against the plaintiffs' due process claim. In *Pietri Bonilla v. Alvarado,* 762 F.Supp. 451, 460–61 (D.Puerto Rico 1991), this court held that the plaintiff did not lose his property interest because he was not fired but transferred and he failed to show a cognizable interest in continued employment in a particular position. In *Cabrero v. Ruiz,* 826 F.Supp. 591, 597 (D.Puerto Rico 1993), this court found that the plaintiff's procedural due process claim was meritless. The plaintiff in that case alleged a due process violation because he had not received a notice or a hearing regarding a reorganization. The court stated that "an employee who has not been terminated has not lost a property interest, and therefore he cannot claim a violation of his procedural due process rights." *See also Rodriguez Pinto,* 798 F.Supp. at 83, *aff'd on*

*this ground,* 982 F.2d 34, 41 (1st Cir.1993) (although the court avoided the constitutional ruling, it affirmed the district court's entry of summary judgment against plaintiff on his due process claim).

Even if we do not take such a categorical stance, finding a due process violation only when an employee has been fired, we still do not see that plaintiffs have made a due process claim likely to succeed on the merits. We find that the plaintiffs have not presented sufficient evidence showing that they have a likelihood of success in proving that the personnel regulations create a property interest in their former positions, or that if one does exist, that defendants violated the regulations by the reorganization and transfer.

In analyzing the plaintiffs due process claim, we will look to state law pertaining to transfers. The plaintiffs point to the Personnel Regulations of the Office of the Governor and the Public Personnel Act to buttress their claim that due process was violated. But the Office of the Governor is exempt from the Public Service Personnel Act. P.R.Laws Ann. tit. 3, § 1338 (1990). Nevertheless, public agencies exempt from the act are required to promulgate their own personnel regulations. The Office of the Governor has promulgated such regulations.

Both plaintiffs who were career employees at the time of the transfer received transfer letters informing them that the transfers were related to administrative changes in the Governor's Office, the needs of the RED Program, administrative changes in the Governor's Office, and the experience and knowledge of the employee, which transfers would redound to the benefit of both the employee and the RED Program. *See Pls.' Br. in Supp. of Prelim. Inj., Exs. 3–4.* The stated reasons for the transfers comport with the bases for transfer listed in the personnel regulations. Regs., Art. 9, Sec. 9.2(1)(a), (b), & (c). *Compare Gonzalez Vega v. Hernandez Colon,* 682 F.Supp. 131, 133–136 (D.Puerto Rico 1988) (although employees might be entitled to continued employment due to career employee status, relevant police regulations authorized transfers in response to needs of public service), *aff'd in part, dismissed in part,* 866 F.2d 519 (1st Cir.1989).

The plaintiffs have not presented any evidence, beyond mere allegations, that the transfers were arbitrary or disciplinary in character, thereby violating the personnel regulations. The fact that the defendants did not mention in the transfer letters all the reasons justifying the transfers, namely the appropriateness of political affiliation to the positions the plaintiffs held, does not mean that they violated the personnel regulations and the plaintiffs' due process rights. In justifying the transfers on the basis of the needs of public service, the defendants satisfied the personnel regulations.

■■■ The third plaintiff, Isabel Martínez–Camacho, was a confidential employee, who had formerly been a career employee. As a confidential employee, she had no due process right in her position. But as a former career employee, she had the right to be reinstated as a career employee in a position similar in duties and salary to the position she formerly held as a career employee. She received a letter informing her that she would be reinstated into career status with the RED Program. The plaintiff argues that she should have been reinstated to her specific former career position at the Puerto Rico Justice Department, or to another analogous position in the Governor's Office pursuant to Regs., Art. 6, Sec. 6.4(1). Because at the time of the transfer the RED Program was in fact a part of the Governor's Office, defendants ostensibly complied with the Personnel Regulations, even if the RED Program was itself transferred in toto to the Housing Department. We find that this co-plaintiff has not shown a likelihood of success of showing that the defendants violated Section 6.4(1).

Nothing in the personnel regulations entitles the plaintiffs to pretransfer hearings. *See Gonzalez Vega,* 682 F.Supp. at 135–36 (career employees who were transferred within Puerto Rico Police Department as part of reorganization did not possess due process property right to remain at geographic locations to which they were initially assigned, and thus were not entitled to pretransfer hearing). But the plaintiffs insist that the government violated its personnel regulations because it did not provide them with thirty days advance notice of the transfers. *See* Regs., Art. 9, Sec. 9.2(2)(d). We find that the defendants' failure to give the plaintiffs thirty days advance notice does not rise to the level of a due process violation, in light of the fact that the plaintiffs had an opportunity to seek review of the transfer decisions. The plaintiffs do not cite any caselaw supporting their contention.

The Regulations permit employees to request a review of a transfer decision before a disinterested, third party. Regs., Art. 9, Sec. 9.2(2)(e). Plaintiff Morales–Narváez did in fact receive such a review. But nothing in the record indicates that the other plaintiffs requested a review of the decision to transfer them. Plaintiff Morales–Narváez's claim that the person reviewing the transfer decision was not a disinterested, third party is unsupported by any evidence; he has not shown a likelihood of success in showing that the hearing was a sham, as he alleges. In sum, the plaintiffs have not shown a likelihood of success on the merits on their due process claim.

**C. 42 U.S.C. § 1985(3) Conspiracy Claim**

■■■ The plaintiffs have also alleged a claim of a civil rights conspiracy in violation of 42 U.S.C. §§ 1985(3) and 1986. A 1985(3) cause of action involves various elements including the requirement that some racial or otherwise class-based invidiously discriminatory animus exist behind the conspirator's actions. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Rodriguez v. Nazario,* 719 F.Supp. 52 (D.Puerto Rico 1989). Although the Court of Appeals for the First Circuit has not addressed this issue, various other courts have held that 42 U.S.C. § 1985(3) does not provide protection to members of political parties.

In *Rodriguez v. Nazario,* the court addressed the specific issue of whether a member of the New Progressive Party in Puerto Rico is protected against discrimination under § 1985(3). The district court decided that "there can be no § 1985(3) protection for purely political conspiracies." *Id.* at 57 (court granted motion to dismiss 42 U.S.C.

§ 1985(3) and 1986 claims), *citing United Broth. of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) and *Harrison v. KVAT Food Management, Inc.,* 766 F.2d 155, 161 (4th Cir.1985) (Republicans as a class are not protected by 42 U.S.C. § 1985(3)); *see also Grimes v. Smith,* 776 F.2d 1359 (7th Cir.1985) (42 U.S.C. § 1985(3) does not reach nonracial political conspiracies); *contra Conklin v. Lovely,* 834 F.2d 543 (6th Cir.1987) and *Keating v. Carey,* 706 F.2d 377 (2d Cir.1983). We agree with the Fourth Circuit's decision in *Harrison,* and with *Rodriguez v. Nazario,* that a claim of discrimination based on political affiliation does not allege a cause of action under 42 U.S.C. § 1985(3). With no § 1985(3) claim, plaintiffs' § 1986 claim also fails. *Creative Environments, Inc. v. Estabrook,* 680 F.2d 822 (1st Cir.1982), *cert. denied,* 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982). In light of the conflicting caselaw, we are not convinced that the plaintiffs have shown a likelihood of success on the merits as to their conspiracy claim.

## IV. IRREPARABLE INJURY TO PLAINTIFFS—POTENTIAL HARM TO THE PUBLIC INTEREST—BALANCING OF INTERESTS

Because the plaintiffs have not shown a likelihood of success on the merits, the possibility that the movant will experience an irreparable injury if the injunction is not granted is small. As the Court of Appeals for the D.C. Circuit has stated:

> [I]n cases involving a claim by movant of interference with protected freedoms or other constitutional rights, the finding of irreparable injury ... depends on an appraisal of the validity, or at least the probable validity, of the legal premise underlying the claim of right in jeopardy of impairment.

*Delaware & H. Ry. Co. v. United Transp. Union,* 450 F.2d 603, 619–20 (D.C.Cir.1971), *cert. denied,* 403 U.S. 911, 91 S.Ct. 2209, 29 L.Ed.2d 689 (1971); *see also Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency and Office of Emergency Preparedness of Com. of Massachusetts,* 649 F.2d 71, 75 (1st Cir.1981) ("[T]he strength of the showing necessary on irreparable harm depends in part on the degree of likelihood of success shown."), *citing Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189, 196 (4th Cir.1977); *see also Weaver,* 984 F.2d at 12 (likelihood of success on the merits is the *sine qua non* of the preliminary injunction standard). The law does not mandate that we divorce the issue of irreparable harm from that of the likelihood of success on the merits. While a violation of First Amendment rights may constitute an irreparable injury, *Elrod,* 427 U.S. at 373, 96 S.Ct. at 2690, we have already noted that the plaintiffs have not been fired, but transferred to positions that are not unreasonably inferior to their former jobs, so that we cannot say that the injury can justly be characterized as irreparable within the factual circumstances of this case, including the weak likelihood of success on the merits.

In addition, as we discussed elsewhere in this Opinion and Order, the government's austerity plan implicates weighty public policy considerations. The public interest would be harmed if the Commonwealth of Puerto Rico is not permitted to implement its public policies without having to deal with employees whose political affiliation may interfere with the government's objectives. In the light of plaintiffs' weak showing of a likelihood of success on the merits, we find that the potential harm to the defendants outweighs the potential injury to the plaintiffs. *Compare Vargas–Figueroa v. Saldana,* 826 F.2d 160, 162–64 (1st Cir.1987) ("[G]iven plaintiff's failure to have established a more substantial probability of prevailing on the merits, the harm caused him by denying a preliminary injunction does not outweigh the harm caused the [defendant] university" by surrendering the university's autonomy to the district court).

## V. CONCLUSION

In light of the discussion above, we deny the plaintiffs' motion for a preliminary injunction because they have not shown a likelihood of success on the merits on any of their claims or that denying the preliminary injunction would result in irreparable harm

to them. In addition, the harm caused by denying a preliminary injunction to the plaintiffs does not outweigh the potential harm caused to the government. This case will proceed expeditiously with discovery, problems concerning which we will address in a separate order.

**SO ORDERED.**