USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-2233 ALAN AULSON ET UX. MAUREEN AULSON, Plaintiffs, Appellants, v. CHARLES BLANCHARD, ET AL., Defendants, Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. George A. O'Toole, Jr., U.S. District Judge] ___________________ _________________________ Before Selya, Stahl and Lynch, Circuit Judges. ______________ _________________________ Gary S. Sackrider for appellants. _________________ Joyce Frank, with whom Michele E. Randazzo and Kopelman and ___________ ___________________ ____________ Paige, P.C. were on brief, for appellees. ___________ _________________________ April 25, 1996 _________________________ SELYA, Circuit Judge. This appeal demands that we mull SELYA, Circuit Judge. _____________ the prerequisites for liability under the Ku Klux Klan Act, 42 U.S.C. 1985(3) (1994). We hold that (1) the class-based animus required to ground a private right of action under the statute applies to conspiracies allegedly involving public officials in the same way as it applies to all other conspiracies; and (2) the requirement is not satisfied where, as here, no sufficiently defined class appears. Accordingly, we affirm the district court's dismissal of the action. I. BACKGROUND I. BACKGROUND Whether or not it is true that all politics is local, this case bears witness that local politics, no less than national politics, can become meanspirited. From 1984 to 1990, plaintiff-appellant Alan Aulson served as a selectman in Georgetown, Massachusetts. In his complaint, he alleges that the defendants (a cadre of elected and appointed municipal officeholders) are members of an incumbent group of "old guard politicians" who more or less run things in the town. In contrast, he is a "member[] of a political group which supports candidates who oppose the politics of the `old guard.'" The complaint charges that Aulson paid a stiff price for his opposition: the members of the old guard collogued against him and wreaked their vengeance by such nefarious means as conducting illegal searches pursuant to sham prosecutions. This course of conduct, he asserts, gives rise to a cause of action under 42 U.S.C. 1985(3). 2 Aulson originally brought his suit in a state venue.1 Remarking the federal question, the defendants removed it to the district court and then sought dismissal under Fed. R. Civ. P. 12(b)(6). Despite the plaintiff's objection, the district court granted the motion to dismiss. This appeal ensued. II. ANALYSIS II. ANALYSIS Inasmuch as the trial judge dismissed the complaint for failure to state an actionable claim, we review his decision de novo, accepting as true all well-pleaded factual averments and indulging all reasonable inferences in the plaintiff's favor. See Leatherman v. Tarrant County N. I. & C. Unit, 507 U.S. 163, ___ __________ ______________________________ 164 (1993); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, _______________ __________________ 52 (1st Cir. 1990). We hasten to add, however, that this deferential standard does not force an appellate court to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited. See Correa- ___ _______ Martinez, 903 F.2d at 52; Dartmouth Review v. Dartmouth Coll., ________ ________________ _______________ 889 F.2d 13, 16 (1st Cir. 1989). It is only when the facts alleged, if proven, will not justify recovery that an order of dismissal under Rule 12(b)(6) may stand. See Gooley v. Mobil Oil ___ ______ _________ Corp., 851 F.2d 513, 514 (1st Cir. 1988). _____ A A Section 1985(3) proscribes certain enumerated  ____________________ 1Technically there are two plaintiffs (Aulson and his wife). Since Mrs. Aulson's presence does not affect the legal issues before us, we omit further reference to her. 3 conspiracies.2 To state a claim under 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege. See Griffin v. Breckenridge, 403 ___ _______ ____________ U.S. 88, 102 (1971). In Griffin, the Supreme Court placed a _______ gloss on these four elements, effectively adding a fifth requirement. It construed the statute's references to "equal protection" and "equal privileges and immunities under the laws" to signify that a plaintiff may recover thereunder only when the conspiratorial conduct of which he complains is propelled by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Id. ___ B B This added requirement looms as an insurmountable obstacle to the plaintiff's attempted embrace of 1985(3). He seeks to ameliorate this difficulty in two different ways: he strives first to detour around the obstacle, and, failing, he then tries to climb over it.  ____________________ 2The statute confers a private right of action for injuries occasioned when "two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. 1985(3). 4 1. Public/Private Conspiracies. The plaintiff's 1. Public/Private Conspiracies. ____________________________ effort to bypass the point entirely centers around his insistence that the requirement of a class-based discriminatory animus applies only to wholly private conspiracies (that is, conspiracies that do not involve public officials acting as such), and that he need neither allege nor prove a class-based animus in this action (which is directed at a conspiracy that allegedly involves public officials doing the public's business). This gambit has been tried in several other circuits and has uniformly been found wanting. See Bisbee v. Bey, 39 F.3d ___ ______ ___ 1096, 1102 (10th Cir. 1994), cert. denied, 115 S. Ct. 2577 _____ ______ (1995); Haverstick Enterps., Inc. v. Financial Fed. Credit, Inc., _________________________ ___________________________ 32 F.2d 989, 994 (6th Cir. 1994); Gagliardi v. Village of _________ ___________ Pawling, 18 F.3d 188, 194 (2d Cir. 1994); Burrell v. Board of _______ _______ ________ Trustees of Ga. Military Coll., 970 F.2d 785, 794 (11th Cir. ________________________________ 1992), cert. denied, 507 U.S. 1018 (1993); Munson v. Friske, 754 _____ ______ ______ ______ F.2d 683, 694-95 & n.8 (7th Cir. 1985). Although this court has never squarely repudiated the gambit, we have on at least two occasions required (albeit without substantive comment) that a class-based animus be shown notwithstanding that public officials were alleged to be active participants in the particular conspiracies there at issue. See Romero-Barcelo v. Hernandez- ___ ______________ __________ Agosto, 75 F.3d 23, 34 (1st Cir. 1996); Daley v. Town of New ______ _____ ____________ Durham, 733 F.2d 4, 7 (1st Cir. 1984). Thus, following the path ______ down which the plaintiff beckons not only would set us apart from our sister circuits but also would undermine our own precedents. 5 In all events, an unforced reading of 1985(3) affords no principled basis for distinguishing between public and private conspiracies. Griffin neither supports nor suggests the _______ existence of such a distinction, and, at any rate, it is not the proper province of a federal court to rewrite a statute under the guise of interpretation. Thus, we decline the plaintiff's invitation to create by judicial fiat two classes of 1985(3) conspiracies along a public/private axis. So ends this phase of our inquiry. To the extent that we have not previously made the scope of the requirement explicit, we now hold that to state a claim under 1985(3) in respect to conspiracies involving public officials, private actors, or both, plaintiffs must allege that the conduct complained of resulted from an invidiously discriminatory class- based animus. 2. Cognizable Classes. The plaintiff next struggles 2. Cognizable Classes. __________________ to surmount the obstacle instead of skirting it. He contends that he is a member of a class protected by 1985(3), and that he has alleged as much. His contention does not withstand the mildest scrutiny. The complaint is a lengthy, somewhat prolix narrative. In regard to the class-based animus requirement, however, it states nothing more than that Alan Aulson and a named confederate (not a party to the suit) are "representative members" of a "class" that is composed solely of persons who support candidates opposed to the politics of the "old guard," and that the 6 defendants are members of the "old guard." On this skimpy predicate, the plaintiff posits that the ad hoc "opposition __ ___ group" is a class, and that the defendants' supposed animus against it is class-based within the meaning ascribed to that adjectival term by the Griffin Court. We do not agree. _______ We have previously interpreted the Griffin gloss to _______ denote that plaintiffs must allege facts showing that (1) the defendants conspired against them because of their membership in a class, and (2) the criteria defining the class are invidious. See Hahn v. Sargent, 523 F.3d 461, 469 (1st Cir. 1975), cert. ___ ____ _______ _____ denied, 425 U.S. 904 (1976); Harrison v. Brooks, 519 F.2d 1358, ______ ________ ______ 1360 (1st Cir. 1975); cf. Bray v. Alexandria Women's Health ___ ____ __________________________ Clinic, 506 U.S. 263, 269 (1993) (holding that women seeking ______ abortions are not a class within the confines of 1985(3)); United Bhd. of Carpenters v. Scott, 463 U.S. 825, 837 (1983) ___________________________ _____ (holding that a group defined by economic criteria does not constitute a class for purposes of 1985(3)). The Supreme Court has not decided whether political differences are invidious criteria that qualify the classes that they define for the protection of 1985(3). See Scott, 463 U.S. at 837 (reserving ___ _____ the question of whether 1985(3) covers more than racially directed conspiracies); Griffin, 403 U.S. at 102 n.9 (same). _______ Although other federal courts have divided on this question, see infra, we have not yet had occasion to lend our ___ _____ institutional voice to the rising cacophony that surrounds it. Nor need we do so today. Whether or not political classes are 7 covered by 1985(3), the particular class that Aulson proposes does not constitute a cognizable class at all. The notion of a cognizable class includes two separate and distinct components. The first component focuses on the substantive characteristic defining the class, e.g., race or gender or political affiliation. While it is universally acknowledged that racial classes are within the ambit of  1985(3), see, e.g., Griffin, 403 U.S. at 102, no such consensus ___ ____ _______ exists anent political classes. Some courts have concluded that political classes are within the protective pale of 1985(3) because reference to political characteristics comprises an invidious method for subjecting persons to differential treatment. See, e.g., Conklin v. Lovely, 834 F.2d 543, 549 (6th ___ ____ _______ ______ Cir. 1987) (holding that 1985(3) may shield a political class); Keating v. Carey, 706 F.2d 377, 387-88 (2d Cir. 1983) (same); _______ _____ Perez v. Cucci, 725 F. Supp. 209, 252 (D.N.J. 1989) (same), _____ _____ aff'd, 898 F.2d 139 (3d Cir. 1990) (table). Other courts have _____ reached the opposite conclusion. See, e.g., Grimes v. Smith, 776 ___ ____ ______ _____ F.2d 1359, 1366, 67 (7th Cir. 1985) (holding that political classes are not so protected); Harrison v. KVAT Food Mgmt., Inc., ________ _____________________ 766 F.2d 155, 163 (4th Cir. 1985) (same); Morales-Narv ez v. _______________ Rossello, 852 F. Supp. 104, 115 (D.P.R. 1994) (same), aff'd on ________ _____ __ other grounds, 65 F.3d 160 (1st Cir. 1995) (table). _____ _______ The second component, by contrast, focuses not on the particular defining characteristic of the putative class, but on whether there is any identifiable class at all. We emphasize 8 that this inquiry is distinct from the question of whether a group denominated by a particular characteristic is sheltered from discrimination by 1985(3). No matter what the alleged basis for discrimination, the allegation of a "class-based animus" naturally presumes that there is a specific, identifiable class against whom the defendants can have discriminated. Accepting for the sake of argument that political classes enjoy the prophylaxis of 1985(3), the present plaintiffs nevertheless stumble over this second prong. Though there is no comprehensive set of rules for determining when individuals constitute a class for purposes of  1985(3), there are certain inescapable minimum requirements. For instance, it is clear that at the very least a class must be more than just a group of persons who bear the brunt of the same allegedly tortious behavior. If a class could be defined from nothing more than a shared characteristic that happened to form the basis of the defendants' actions, the requirement of class- based animus would be drained of all meaningful content. Justice Scalia put the proposition in these terms: Whatever may be the precise meaning of a "class" for purposes of Griffin's speculative _______ extension of 1985(3) beyond race, the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the 1985(3) defendant disfavors. Otherwise, innumerable tort plaintiffs would be able to assert causes of action under 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with.  Bray, 506 U.S. at 269. ____ 9 Our own case law confirms that a class cannot be defined solely on the basis of harm inflicted. In Creative ________ Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir.), cert. ___________________ _________ _____ denied, 459 U.S. 989 (1982), we considered a 1985(3) claim ______ brought by a developer, alleging that a municipal planning board discriminated against a class of future homeowners in the course of rejecting a proposed subdivision. We held that even if the developer could sue on behalf of this class, no 1985(3) claim would lie because the class was no more than "an undefined group of people with unknown income, racial, political and social characteristics." Id. at 834. The only thing that the members ___ of this group had in common was that they stood to be disadvantaged by the defendants' actions. Consequently, the complaint "failed to identify any definite class which would satisfy section 1985(3)'s requirement." Id. ___ The principle that emerges from these cases is that a class, to be cognizable, must be identifiable by reference to "something more than . . . [the members'] desire to engage in conduct that the 1985(3) defendant disfavors." Bray, 506 U.S. ____ at 269. In other words, the line drawn by the substantive characteristic must divide individuals into distinct, separate, and identifiable groups. This means, for example, "white" as opposed to "non-white," see, e.g., Stevens v. Tillman, 568 F. ___ ____ _______ _______ Supp. 289, 293 (N.D. Ill. 1983) (holding that whites constitute a protected class under 1985(3)), "female" as opposed to "male," see, e.g., Libertad v. Welch, 53 F.3d 428, 449 (1st Cir. 1995) ___ ____ ________ _____ 10 (holding that women constitute a protected class under  1985(3)), or, if political classes are includable a matter on which we do not opine "registered Republicans" as opposed to other voters, see, e.g., Keating, 706 F.2d at 379 (holding that ___ ____ _______ Republicans constitute a protected class under 1985(3)). We hold, therefore, that a class is cognizable for purposes of 1985(3)'s class-based animus requirement only when it is comprised of a distinctive and identifiable group. For this purpose, distinctiveness connotes that a reasonable person can readily determine by means of an objective criterion or set of criteria who is a member of the group and who is not. See ___ Rodgers v. Tolson, 582 F.2d 315, 318 (4th Cir. 1978) (rejecting _______ ______ alleged class partly because it was "impossible to determine who besides the [plaintiffs] belong to this class" and because the plaintiffs had failed to identify "a larger group that could be objectively identified by an observer"); Bricker v. Crane, 468 _______ _____ F.2d 1228, 1233 (1st Cir. 1972) (noting that a class must be "readily recognizable" in order to come within the scope of  1985(3)), cert. denied, 410 U.S. 930 (1973). _____ ______ Measured against this benchmark, the group described by the plaintiff falls short of qualifying as a cognizable class for purposes of 1985(3)'s class-based animus requirement. The plaintiff defines the group only as persons who support other persons "opposed to the politics of the old guard," and offers himself and one other former selectmen as "representative members." As far as anybody can tell, aside from these two 11 "members" this group is wholly indeterminate. It might include all the voters in Georgetown, or it might include only voters who have spoken out against incumbent selectmen, or it might include only the two individuals featured in the complaint, or it might include anyone whose inclusion would benefit the plaintiff at any given time. There is simply no way to characterize this group as an identifiable segment of the community by reference to any objective criteria, and, hence, it cannot serve as a cognizable class within the purview of 1985(3). See Gleason v. McBride, ___ _______ _______ 869 F.2d 688, 695 (2d Cir. 1989) (rejecting class status under  1985(3) when the plaintiff alleged only that he was "a political opponent of the defendants and was extremely vocal in his opposition to their management of the [municipality]"); Rodgers, _______ 582 F.2d at 317 (holding that a complaint which alleged discrimination against a class of persons "in political and philosophical opposition to" municipal commissioners did not describe a "cognizable class" and therefore failed to state a cause of action under 1985(3)).3 The lack of distinctiveness is especially striking in this case because the proposed class is defined primarily in the negative; that is, the plaintiff describes the class principally with reference to what it opposes the old guard rather than with reference to what it espouses. The ambiguities inherent in  ____________________ 3Concededly, the definition of any political class may face ___ serious problems in this regard. But cf. Cameron v. Brock, 473 ___ ___ _______ _____ F.2d 608 F.2d 608, 610 (6th Cir. 1973) (holding that "clearly defined" political classes are covered by 1985(3)). We leave those headaches for another day. 12 this negative definition compound the problem of identifying the members of the class since there is no way for an objective observer to identify the members of the other class. They could _____ be a few of the incumbents, most of the incumbents, all the incumbents, or some larger aggregation that includes incumbents and their adherents. To put it bluntly, membership in both the plaintiff's proposed class and the antagonist class (the old guard) is, like beauty, almost exclusively in the eye of the beholder. This is not the stuff of cognizability. To sum up, the lone criterion that the plaintiff offers to define the suggested class is opposition to the "politics of the old guard." This description will not do because it draws no readily identifiable line. Objectively speaking, a third party at most can observe that the putative class is comprised of some (unknown) persons who support some (unknown) political aspirants who object to some (unknown) aspect of some (unknown) political views or practices of some other (unknown) persons who have enjoyed some (unknown) degree of political success in Georgetown for some (unknown) period of time. We have said enough on this score. By not alleging discrimination against a distinctive, readily identifiable class of persons, the plaintiff has failed to state an actionable claim under 1985(3). See Gleason, 869 F.2d at 695; Rodgers, 582 F.2d ___ _______ _______ at 317; see also Wilhelm v. Continental Title Co., 720 F.2d 1173, ___ ____ _______ _____________________ 1176 (10th Cir. 1983) (affirming dismissal for failure to state a claim when complaint did not "contain a description of a class of 13 persons or group that is sufficiently definite or precise to set against the `class of persons' terminology in 1985(3)"), cert. _____ denied, 465 U.S. 1103 (1984). Consequently, the lower court did ______ not err in dismissing the action. C C We must attend to a last detail. At one point, the plaintiff asked the district court for leave to amend the complaint by naming one or two additional defendants. The court denied the motion without prejudice to renewal if the case survived a dispositive motion on behalf of the existing defendants. The district court subsequently granted the defendants' motion to dismiss without granting leave to amend. On appeal, the plaintiff makes an oblique reference in the reply brief that suggests he should have been given an opportunity to replead. We rebuff this suggestion for three reasons. First, relief from an appellate court, requested for the first time in a reply brief, is ordinarily denied as a matter of course, see ___ Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990), and _________ ______________ this case fits comfortably within the general rule. Second, to the extent the request for leave to amend is before this court at all, the plaintiff has advanced absolutely no developed argumentation in support of it, and so we deem it to have been abandoned. See Ryan v. Royal Ins. Co., 916 F.2d 731, 734 (1st ___ ____ _______________ Cir. 1990); United States v. Zannino, 895 F.2d 1, 17 (1st Cir.), _____________ _______ cert. denied, 494 U.S. 1082 (1990). Third, the only amendment _____ ______ 14 that the plaintiff sought below involved adding defendants a step that would have done nothing in terms of better defining a class for purposes of 1985(3). Thus, the proposed amendment would have been futile and the district court therefore did not err in neglecting to authorize an amended complaint. See Foman ___ _____ v. Davis, 371 U.S. 178, 182 (1962); Correa-Martinez, 903 F.2d at _____ _______________ 59. Relatedly, if what the plaintiff now has in mind is something other than adding defendants, he has not so stated, and, in all events, we find nothing in the record which indicates that he could possibly delineate a cognizable class and thereby state an actionable claim under 1985(3). Mindful of these circumstances, we will not permit the plaintiff to string this litigation out further by attempting to replead in hopes that he can resuscitate a case that, by all appearances, is terminal. See Correa-Martinez, 903 F.2d at 59 (counselling against ___ _______________ "needlessly prolong[ing] matters" when "an amendment would be futile or would serve no legitimate purpose"); Dartmouth Review, ________________ 889 F.2d at 23 (similar). III. CONCLUSION III. CONCLUSION We need go no further. Because the district court appropriately granted the defendants' motion to dismiss without simultaneously granting leave to amend, the judgment below must be Affirmed. Affirmed. ________ 15