Miguel MALDONADO AGUEDA,
Plaintiff,

v.

Jesus M. Lugo MONTALVO,
et al., Defendants.

Civ. No. 91–2455 (JAF).

United States District Court,
D. Puerto Rico.

June 25, 1993.

**48**

Raúl Barrera–Morales, San Juan, PR, for plaintiff.

Mayra Maldonado–Colón, Kenneth Colón, Director, Federal Litigation Div., Dept. of Justice, Com. of Puerto Rico, San Juan, PR, for defendants.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiff, a former employee of the Utuado Health Center, was terminated from his position purportedly for excessive absenteeism. Plaintiff, however, contends that defendants based his employment termination on his political affiliation with defendants' political opponents. Defendants now move for summary judgment, claiming that plaintiff has not presented any factual disputes that need resolution by means of a trial. We disagree and **deny** the motion for summary judgment. We do, however, **dismiss** the Municipality of Utuado as a defendant in this case.

### I.

#### *Facts*

On October 1, 1979, in the Municipality of Utuado ("Utuado"), Puerto Rico, plaintiff Miguel Maldonado Agueda ("Maldonado") was appointed "warehouse keeper," and assigned to the local health center. Maldonado worked continuously for Utuado as warehouse keeper through the time of his discharge in 1990. During this time period,

plaintiff Maldonado was also active in the political arena. This political work was outside the realm of his employment, as Maldonado was a career civil servant. Plaintiff's political affiliation with the New Progressive Party ("NPP"), however, was well known in Utuado. Maldonado had held a position in the Electoral Unit in Utuado for the NPP and had coordinated a senatorial campaign in Ponce.

The political party in power in Utuado from the time of plaintiff's appointment to the end of 1988 was the NPP; however, a Popular Democratic Party ("PDP") candidate, defendant Jesús M. Lugo Montalvo ("Montalvo"), won the 1988 election and became Mayor of Utuado at the onset of 1989. After Montalvo became mayor, defendant Francisco Ruben Gonzalez ("Gonzalez") was appointed Health Coordinator for Utuado, and defendant Alberto Rivera Torres ("Rivera") was named Municipal Personnel Director.

At the time of the transference of power in the administration of Utuado, the health center was being remodeled, and plaintiff had been temporarily relocated from his usual office space. After defendant Montalvo's ascension to the mayoralty of Utuado, plaintiff Maldonado was allegedly relocated again to an office area unfit for human habitation. Plaintiff claims that his relocation came on the orders of the defendant mayor for the purpose of harassing plaintiff because of his affiliation with the opposition political party, the NPP. Plaintiff's "new" office quarters allegedly lacked a telephone and nearly all requisites of an orderly and tolerable work environment. In fact, plaintiff claims that the area in which he was temporarily officed also served as a transition point for the health center's toxic wastes—including used syringes and other dangerous refuse.

After the completion of remodeling of plaintiff's original work area, plaintiff was allowed to return to his old office, but was prevented from returning with all of his needed job supplies. Plaintiff, therefore, had to commute between the old and temporary areas to perform his job; however, plaintiff alleges that he was denied a key to one of his

work areas, was blocked unnecessarily from using a convenient hallway, and was forced constantly to seek out the maintenance chief to open doors and the like. Plaintiff alleges additional, similar facts that paint a picture of plaintiff's hindered job performance—all because of defendants' actions. Not only was plaintiff allegedly harassed at work, but he was also allegedly caused to feel extreme stress and anxiety, adversely affecting his emotional and physical health. And at the heart of this legal controversy, we note that plaintiff claims to have missed significant amounts of work because of the health reasons mentioned above. Plaintiff Maldonado also avers that he informed his superiors of the health-based cause for his absences, including a reference to treating psychiatrist Dr. Juan A. Guillen's recommendation that plaintiff not work.

On August 9, 1990, Director of Personnel Rivera informed plaintiff that an administrative action was being brought against him based on an abandonment-of-work charge, and that plaintiff could lose his job as a consequence. The charges alleged that plaintiff had been absent from work July 23–24, 26, 30–31 and August 1–3, 6 and 7 of 1990 without authorization or explanation, a violation of Article 8.9 of the Personnel Regulations of Utuado. On September 19, 1990, plaintiff requested an administrative hearing on the abandonment accusations. A hearing was scheduled for September 19, 1990, but Maldonado was allegedly given only two days' notice. Plaintiff informed defendant Rivera of a conflicting doctor's appointment, and the date of the proceeding was pushed back to September 28, 1990. Again, however, plaintiff allegedly could not attend the informal hearing. Dr. Guillen had purportedly recommended that plaintiff not go to the hearing because the hearing could adversely affect his health. Defendant Rivera was notified of this recommendation, and again accommodated plaintiff by moving the hearing date to October 26, 1990. According to Rivera, however, failure to attend the hearing would be interpreted as a waiver of plaintiff's right to attend the hearing and to present evidence to counter the charges brought

against him. Not having any other option, plaintiff claims to have sent his lawyer and his brother to the hearing in order to present medical evidence of his condition and document his inability to appear at the hearing. The facts surrounding the hearing are difficult to discern, such as what plaintiff's lawyer and brother admitted to the hearing officials and how plaintiff intended his lawyer and brother to represent him, but regardless, defendant Rivera dismissed plaintiff Maldonado from his job for abandonment of work in a "communication" dated November 26, 1990.

On November 19, 1991, plaintiff filed this action in the United States District Court for the District of Puerto Rico seeking declaratory and injunctive relief in addition to money damages for political discrimination based on various violations of Puerto Rico and United States constitutional protections.[1] (*Complaint*, Docket Document No. 1). On October 8, 1992, defendants moved for summary judgment against plaintiff. (*Motion for Summary Judgment*, citing Fed.R.Civ.P. 56(b), Docket Document No. 16). Defendants argue that plaintiff has not established a "cognizable" civil rights claim under 42 U.S.C. § 1983, or a conspiracy under 42 U.S.C. § 1985. *Id.* at 1–2. All three defendants also assert the affirmative defense of qualified immunity.

## II.

### Standard for Summary Judgment

Rule 56(c) states that summary judgment "shall be rendered forthwith if the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is *no genuine issue* as to any *material fact* and that the moving party is entitled to a *judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added). Therefore, in deciding a summary judgment motion, there are essentially three inquiries to pursue: the materiality and genuineness of the factual dispute, and the entitlement to judgment as a matter of law. *Id.; Román*

---

1. Federal jurisdiction is founded in the Civil Rights Act, 42 U.S.C. § 1983, and pendent juris-

diction is invoked as to the claims under the laws of Puerto Rico.

*Figueroa v. Torres Molina,* 754 F.Supp. 239, 240–41 (D.P.R.1990).

" '[G]enuine' means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." *United States v. One Parcel of Real Property with Bldgs.,* 960 F.2d 200, 204 (1st Cir.1992) (citation omitted). A "material" fact describes one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

It is important to note that summary judgment may be granted even if there is a factual dispute, as long as the fact at issue is *immaterial* to the legal disposition of the case. Moreover, summary judgment may be granted even if a fact is *material,* as long as there is no genuine dispute about the fact. *U.S. Fire Ins. Co. v. Producciones Padosa, Inc.,* 835 F.2d 950, 953 (1st Cir.1987).

In all of the court's considerations in deciding a summary judgment motion, the court must consider the record in the light most favorable to the non-moving party. *Bank One Texas, N.A. v. A.J. Warehouse, Inc.,* 968 F.2d 94, 97 (1st Cir.1992).

### III.

### *Discussion*

The record in this case does not support a general grant of summary judgment. Several genuine issues of material fact are in dispute, and may only be determined by a trial on the merits. *See* Fed.R.Civ.P. 56(c). Plaintiff's general averment is that defendants violated plaintiff's civil rights in terminating his employment on the basis of political affiliation. *See* U.S. Const. amend. I, V, and XIV; 42 U.S.C. §§ 1983, 1985, and 1988; 28 U.S.C. §§ 2201 and 2202; P.R. Const. Bill of Rights art. II, §§ 1 and 16; 3 L.P.R.A. § 1301 *et seq.;* 31 L.P.R.A. § 5141. There are four basic segments to plaintiff's allegation: One, plaintiff's civil rights were violated because of unconstitutional employment discrimination based on political affiliation; two, plaintiff had a property interest in his employment and was denied due process in his termination by not being afforded an ade-

quate hearing; three, defendants conspired to violate plaintiff's civil rights in the above alleged fashion; and four, plaintiff brings related state civil rights claims into this federal forum by invoking the court's pendent jurisdiction.

Defendants have strenuously argued against each segment of plaintiff's complaint, attempting to demonstrate that all or some of the issues of this case are ready for legal determination because the relevant facts may be discerned from the record—even though the record must be considered in the light most favorable to the nonmoving plaintiff. We hold that material facts are in dispute as to all but one defendant, and that the disputes are indeed genuine. For the parties' benefit, we briefly explain our reasoning.

### A. *Unconstitutional Employment Discrimination Based on Political Affiliation*

■ Defendants claim that plaintiff's civil rights suit based on 42 U.S.C. § 1983 fails to state a claim for two primary reasons. First, defendants correctly explain the elements of a successful section 1983 claim and aver that none of the three individual defendants had the required level of personal involvement in the alleged discrimination. Moreover, defendants deny that the Utuado Health Center is under the jurisdiction of the municipality, but rather that it is an instrumentality of the state. Since plaintiff's job complaints involve employment at the Utuado Health Center, defendants allege that they cannot be held accountable. (*See Motion for Summary Judgment,* Docket Document No. 16, at 8–13). Second, defendants argue that the reason for plaintiff's termination was his unapproved and unexplained absenteeism and not his political status. Moreover, defendants aver that plaintiff has presented no concrete evidence of discrimination based on political affiliation. (*See Motion for Summary Judgment,* Docket Document No. 16, at 14–17).

It is the law that mere allegations in pleadings do not constitute facts for purposes of resolving a summary judgment dispute; however, the record reveals much more than mere accusations against defendants. On reviewing the record with the standards im-

posed by a summary judgment motion, it is clear that material facts are in dispute with regard to plaintiff's section 1983 claim. First, as regards the control of the health center, the sworn statement of the Administrator of the Utuado Health Center unequivocally states that actual authority for supervising plaintiff and administering other duties regarding the center rested in the named defendants of this action. (*See Sworn Statement, Nicolás Rivera González*, Docket Document No. 32). Defendants never provided evidence of their claims regarding control of the center; thus, if any summary action were taken, it certainly would not be in favor of defendants. The court considers the facts surrounding the control of the health center and its employees to be a dispute of material fact that should be determined by a trial.

Second, defendants claim that political affiliation had nothing to do with plaintiff's termination. However, there are two sworn statements specifically indicating that plaintiff's association with the NPP may indeed have been a cause for his dismissal. (*See id.; Sworn Statement, Angel Montalvo Rodríguez*, Docket Document No. 22, Exhibit K). Again, defendants make claims that no discrimination occurred; however, plaintiff has placed into the record of this case evidence that clearly shows an existent dispute of material fact. Moreover, the above-mentioned sworn statements provide evidence of sufficient personal involvement by each of the individual defendants to constrain this court from granting summary judgment as to any individual defendant.

## B. *Due Process Violation in Conduct of Termination Hearing*

Defendants go on at length about the property rights of public employees, including the right to an informal hearing before termination. Nowhere do defendants argue that plaintiff has no entitlement to such a hearing, and in fact their brief implicitly concedes that point. The crux of the dispute about the process provided to plaintiff before his termination concerns plaintiff's medical explanations for his missing several work days, for rescheduling pre-termination hearings, and for plaintiff's intentions as expressed by his representatives at the final and near-mandatory hearing of October 26, 1990, at which plaintiff was not present. (*See Motion for Summary Judgment*, Docket Document No. 16, at 2–3, 17–22). Plaintiff contends that legal counsel and plaintiff's brother went to this final hearing because plaintiff's representatives were to provide medical evidence explaining plaintiff's absence. Defendants make several claims about what happened at the hearing, including an allegation that plaintiff's representatives admitted important facts pertaining to plaintiff's work record. These same representatives, according to plaintiff, were not empowered to speak for plaintiff and did not admit the facts alleged by defendants. Is there a material factual dispute involving the due process argument? The evidence of the record indicates that a genuine dispute of material fact exists in regard to both the propriety of plaintiff's termination and the pre-termination hearing of October 26, 1990. First, plaintiff has submitted a doctor's signed certification and other documents indicating that plaintiff was not in a condition to work on the days when he allegedly "abandoned" his work and was unable to attend an administrative hearing on account of his emotional condition for which he was taking psychoactive medication. (*See Certification of Dr. Guillén and related medical documents*, Docket Document No. 22, Exhibits A–H). The Sworn Statement of Nicolás Rivera González, Administrator of the Utuado Health Center, *see Sworn Statement, Nicolás Rivera González*, Docket Document No. 32, states that plaintiff informed Rivera González of his condition and inability to work. Thus, the evidence certainly indicates that plaintiff may not have been able to work on the days in question and may not have been able to attend the final pre-termination hearing. Due process in a pre-termination hearing of a career civil servant with a property interest in his job is required by law. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538–47, 105 S.Ct. 1487, 1491–96, 84 L.Ed.2d 494 (1985); *De Feliciano v. de Jesús*, 873 F.2d 447, 452 (1st Cir.), *cert. denied*, 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989). Such a hearing, in order to have any

meaning whatsoever, necessarily requires plaintiff's participation or consent to representation. The evidence submitted by plaintiff regarding his condition and pertaining to plaintiff's instructions to his alleged representatives creates genuine disputes of material facts that bear on the adequacy of the hearing. Plaintiff has submitted a sworn statement denying defendants' charge that attorney Angel Juarbe De Jesús and plaintiff's brother, Daniel Maldonado, were authorized to represent plaintiff at the hearing other than to present medical evidence of plaintiff's emotional condition. (*See Sworn Statement, Miguel Maldonado Agueda*, Docket Document No. 22, Exhibit I). The same contention is sworn to by plaintiff's brother, who actually attended the hearing. (*See Sworn Statement, Daniel Maldonado Agueda*, Docket Document No. 22, Exhibit J).

### C. Conspiracy to Violate Civil Rights

■ Defendants claim in their summary judgment brief that "[n]o evidence has been presented to this Honorable Court to prove, without doubt said alleged conspiracy." (*See Motion for Summary Judgment*, Docket Document No. 16, at 25). The court needs to remind defendants that at this stage in the litigation, plaintiff need only state colorable claims in order to proceed to a hearing on the merits of the claims. Plaintiff does not have to "prove, without doubt said alleged conspiracy" in order to avert an adverse granting of summary judgment. Fed. R.Civ.P. 56. Has plaintiff presented evidence in the record that constitutes a genuine dispute of material fact regarding an alleged conspiracy? Again, plaintiff has met his burden through the Sworn Statement of Nicolás Rivera González, *see Sworn Statement, Nicolás Rivera González*, Docket Document No. 32, in which the Utuado Health Center Administrator states that defendants, including the mayor, worked together against employees associated with the NPP generally and plaintiff in particular. The existence of the conspiracy and the persons involved certainly raise factual disputes material to an understanding of the alleged conspiracy.

### D. Pendent Claims

■ Defendants argue that since the legal standards for liability differ for the claims based on local law and those founded on federal law, hearing both federal and state claims in a single trial or proceeding would be prejudicial. Specifically, defendants describe the standard for the claim of violations of local rights as "mere negligence" and the standard for the federal rights violations claims as "gross negligence." The court agrees with this assessment but does not find persuasive the argument against pendent jurisdiction. The Supreme Court and the First Circuit have recognized that the decision whether to allow pendent state claims to be brought in a federal action is largely discretionary. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (establishing a two-part test for pendent jurisdiction: First, the federal and state law claims must arise out of a common nucleus of operative fact and, second, pendent jurisdiction must not have a prejudicial effect). We further note that pendent jurisdiction is not barred by the Court's interpretation of the Eleventh Amendment in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), since we assume defendants are sued in their personal and not official capacities. We, therefore, exercise our discretion in allowing pendent jurisdiction. The two standards are readily explainable to a jury so as not to cause confusion, and judicial economy is furthered by hearing these related claims in a single proceeding.

### E. Other Issues Raised by Defendants in the Rule 56 Motion

#### 1. Qualified Immunity

■ There is no doubt that if employment discrimination based on political affiliation was perpetrated by defendants, such defendants would not be entitled to qualified immunity in that they would have clearly and objectively violated well-known and established protections guaranteed by the Constitution. *See Harlow v. Fitzgerald*, 457 U.S.

800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). We should point out that constructive termination for political affiliation also violates the Constitution, *i.e.,* it is impermissible for an employer to impose conditions that would cause a reasonable employee to be so uncomfortable as to quit the job. *See generally Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). The qualified immunity defense does not apply to the defendants in this case.

### 2. Summary Judgment with regard to the Municipality of Utuado

In order for a municipality to be held accountable for constitutional violations, plaintiff must plead specific facts that demonstrate that the policies of the local government are at fault. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). For example, facts could show that a municipality failed to adequately train employees resulting in violations of the United States Constitution. *See Bowen v. Manchester,* 966 F.2d 13, 18 (1st Cir.1992) (citing *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988)). And certainly a municipality cannot be held responsible under a theory of respondeat superior. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Since plaintiff's evidence in the record does not explain how plaintiff's rights were violated as a consequence of the official policies of the Utuado municipality per se, we must evaluate the evidence presented to see if a reasonable inference can be drawn that the municipality may be responsible. On reviewing the record, the evidence presented against the individual defendants does not rise to the level necessary to implicate the municipality's customs, policies, ordinances, or regulations. Therefore, we must **dismiss** plaintiff's suit as it relates to the Municipality of Utuado as a defendant. Plaintiff's suit against the other defendants remains and will proceed to trial.

## IV.

### *Conclusion*

We **dismiss** the Municipality of Utuado as a defendant in this suit. However, we **deny** defendants' motion for summary judgment as explicated above. There are material facts in dispute at every critical juncture of this suit. A trial is the mechanism to resolve such factual disputes and will commence on **October 4, 1993, at 1:30 P.M.**

**IT IS SO ORDERED.**