**Jorge Mercado ALICEA**
**et als., Plaintiff,**

v.

**P.R. TOURISM COMPANY**
**et als., Defendants.**

**Civil No. 01–2375(JAG).**

United States District Court,
D. Puerto Rico.

July 3, 2003.

Francisco R. Gonzalez–Colon, F.R. Gonzalez Law Office, San Juan, PR; and Ismael Rodriguez–Izquierdo, Santurce, PR, for Plaintiff.

Rafael Escalera–Rodriguez, Laura Belendez–Ferrero, Nestor J. Navas–D'Acosta, Reichard & Escalera, Felix M. Roman–Carrasquillo, Jose A. Santiago–Rivera, Commonwealth Department of Justice, Federal Litigation Division, Salvador J. Antonetti–Stutts, Pietrantoni Mendez & Alvarez, Banco Popular Center, Carlos M. Aquino–Ramos, Fiddler, Gonzalez & Rodriguez, Laura Belendez–Ferrero, Reichard & Escalera, San Juan, PR, and Roberto A. Fernandez–Quiles, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiffs Jorge Mercado Alicea ("Mercado") and Angel Nazario ("Nazario") brought suit under 42 U.S.C. § 1983 against their former employer the Puerto Rico Tourism Company ("PRTC") and Milton Segarra ("Segarra"), Nelson Cardona ("Cardona"), Jose J. Faz ("Faz"), Mariano Mendez ("M.Mendez"), William Mendez ("W.Mendez") and Anabel Jaime ("Jaime") (collectively "defendants"). Plaintiffs allege that defendants discriminated against them based on their political affiliation in violation of their First Amendment and due process rights. Mercado alleges that his employers harassed him, demoted him, and thereafter fired him due to his political affiliation. Nazario alleges that defendants harassed him on account of his political beliefs to the point he was forced to resign to his position at the PRTC. Plaintiffs claim they were not afforded an opportunity to be heard consonant with their due process rights. Pending before the Court is defendants' motion for summary judgment (Docket Nos. 81 & 84) with a statement of uncontested facts pursuant to Local Rule 311.12. Plaintiff opposed the motion (Docket No. 95) and defendants filed a reply (Docket No. 101). For the reasons that follow, the court GRANTS the motion.

## FACTUAL BACKGROUND

In compliance with Local Rule 311.12, defendants have submitted "a separate, short concise statement of material facts as to which the moving party contends there is no genuine issue to be tried and the basis for such contention as to each material fact, properly supported by specific reference to the record." D.P.R.R. 311.12. Plaintiffs, however, have blatantly ignored the mandates of Local Rule 311.12. Their opposition to defendants' uncontested facts contain few references to the record. It is well-established that "a list of facts with no specific references to the record is of no use to the Court." *Hogar Club Paraiso, Inc. v. Varela Llavona*, 208 F.R.D. 481, 482 (D.P.R.2002). Plaintiffs cannot expect the Court to "ferret through the record, read all the answers to interrogatories, study all

the attached documents and carefully scrutinize all the depositions for lurking genuine issues of material fact." *Dominguez v. Eli Lilly & Co.,* 958 F.Supp. 721, 727 (D.P.R.1997).

Moreover, plaintiffs have not filed their own statement of facts as to which genuine issue of fact exist, as Rule 311.12 requires. Instead, plaintiffs filed their own statement of *uncontested* facts, again completely lacking any useful references to the record. Plaintiffs' make conclusory statements and allege facts without providing any evidence to support them (See Docket No. 95 at ¶ 3, 6, 10). To note just one example, Mercado refers to witnesses who have not been deposed and who have not filed an affidavit. (See Docket No. 95, *Plaintiff's* (sic) *Commentaries to Defendants Uncontested Facts,* at ¶ 4 (referring to the testimony of Luis Gonzalez which is not in evidence), *Plaintiff's* (sic) *Proposed Uncontested Facts,* at ¶ 19 (referring to the alleged opposition of Zamarie Vazquez and Darlene Rodriguez to Nazario's work product, without submitting any evidence to that effect)). The First Circuit has repeatedly held that district courts need not tolerate such sloppiness.

█ Local Rule 311.12 provides that the "moving party's statement will be deemed to be admitted unless controverted by the statement required to be served by the Opposing Party." D.P.P.R 311.12. Clearly, "parties who ignore Rule 311.12 do so at their own peril," *Hogar Club Paraiso,* 208 F.R.D. at 482 (*citing Velez v. Puerto Rico Electric Power Authority,* 170 F.Supp.2d 158, 162 (D.P.R.2001)), and "once so warned, a party's failure to comply would … be grounds for judgment against that party." *Nieves Ayala v. Johnson & Johnson,* 208 F.Supp.2d 195, 198 (D.P.R.2002); *Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 33 (1st Cir. 2001). Accordingly, the Court hereby admits all the facts, submitted by defendants, which have been adequately supported by references to the record as follows.

Mercado served as Gaming Official Supervisor ("Gerente de Operaciones de Juegos del Azar") at the PRTC since 1996. His position was designated as a Career Service position. As such, Mercado was responsible for supervising the operation of collections, slot machines and games of chance. As part of his duties, Mercado routinely visited casinos and other places where games of chance are played to supervise, collaborate and evaluate the areas of Games of Chance, slot machines and collections, as well as to ensure compliance with the Games of Chance Statute.

On or about December 1999, Mercado asked M. Mendez, the Cage and Collection Manager at the Ambassador Plaza Hotel, to cash a check for him. The check was made to the Order of the New Progressive Party("NPP"), it bore the name Carlos Pesquera on the lower left hand side and was in the amount of one thousand dollars. The check did not have a bank name, address or account number. Mercado wrote the name of a bank on the check and wrote his name "Georgie Mercado" and the word "Tourism" on the reverse side of the check. M. Mendez cashed the check but was later informed by Ismael Vega (Hotel & Casino Comptroller and supervisor) that he was not supposed to cash checks of that nature.

On February 16, 2001, Mercado requested treatment at the State Insurance Fund. Thereafter, he sought a medical leave and license without pay from August 23, 2001 until October 31, 2001. Mercado returned to work on November 1, 2001. On June 27, 2002, Mercado was dismissed from his employment at the PRTC based on the events of December 1999. His dismissal letter indicated that he was being dismissed for violating Section 12–3(3)(5)(16)(17)(18) of the Human Resources

Regulations of the PRTC dated October 25, 2000 which prohibit, among others:

(3) Availing yourself of your job's duties and powers, property or public funds to directly or indirectly benefit from the same, for family member or any other person, business or entity, to gain advantages, benefits or privileges not allowed by the law.

(5) Accepting or soliciting from anyone, either directly or indirectly for any member of your family unit, or any other person, business or entity, asset of any financial value, including gifts, loans, promises, favors or services, in exchange of an action by said official or public employee, being influenced to favor that or any other person.

(16) Using your official position for political endspartisan or for other ends that are not compatible with public service.

(17) Perform duties or tasks that result in a conflict of interest with your obligations as a public employee.

(18) Conduct that is improper or is against duties, which taint the good name of the Company or of the Government of Puerto Rico.

The letter likewise stated that such conduct constituted a violation of the Discipline Manual of the Tourism Company, approved on May 15, 1989, which enumerates the following as violations of the same:

(22) Conduct yourself in such a way that taints the good name of the Company, either during or out of regular work hours as a public employee.

(61) Performing services or financial relationships with individuals or entities who are considered to be a conflict of interest with your duties as a public employee.

(62) Performing tasks, activities or duties that entail conflicts of interest against your duties as a public employee.

(66) Embezzlement or undue use of funds, assets or services of the company.

The letter sated that Mercado could appeal his decision before the Officer of the Examiner of the Tourism Company within fifteen days. Mercado never did so.

On April 9, 2002, the PRTC summoned Mercado to an informal administrative hearing regarding his termination. Mercado requested a continuance and the PRTC obliged, setting the hearing for April 24, 2002. On that date, Mercado's attorneys appeared unaccompanied by their client but bearing a medical certificate stating that Mercado was ill with respiratory ailments (*See* Docket No. 95, Exhibit 11). The PRTC postponed the administrative hearing until May 2, 2003. On April 20, 2002, Mercado again sought a continuance presenting a handwritten note from his psychiatrist recommending that he distance himself from work for one month. The PRTC granted this third request for a continuance, stating that the regulations and procedures strongly disfavored the unnecessary protraction of disciplinary procedures related to work matters. The hearing was rescheduled for June 4, 2002. On June 4, 2002, Mercado's lawyer again appeared unaccompanied by his client. In a letter dated that same day, PRTC indicated to Mercado that in light of the uncertainty of being able to hold an informal administrative hearing, it would grant him an opportunity until June 14, 2002 to submit his position in writing before making a final decision regarding his letter of dismissal dated June 27, 2001.

■ Nazario began working at the PRTC on August 4, 1999, as Director of Information Systems. His position was classified as a Career Civil Service position. On April 14, 2000, former governor

Pedro Rosello issued Executive Order OE–2000–19. The same established that the Directors of Computer Information Systems at government agencies should be designated by the nominating authority and that such position would be a trust position.[1] On February 20, 2001, the PRTC named Daniel Gonzalez ("Gonzalez") as Principal Officer of Information Systems at the PRTC. Nazario and the personnel reporting to him were ordered to report to Gonzalez as their new supervisor. Nazario was further ordered to give Gonzalez the codes for all company systems. On March 9, 2000, Nazario requested a transfer with a pay increase to the Municipality of San Juan effective April 15, 2001. He now alleges his transfer was the result of a constructive discharge based on his political affiliation with the PNP.

Plaintiffs filed the present complaint on October 15, 2001.

## SUMMARY JUDGMENT STANDARD

The standard for summary judgment is governed by Fed.R.Civ.P. 56. The court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A contested fact is

'material' when it has the potential to change the outcome of the case. *Vega–Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997). An issue is genuine if a reasonable jury could resolve the dispute for the nonmoving party. *Cortes–Irizarry v. Corporacion Insular*, 111 F.3d 184, 187 (1st Cir.1997); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to defeat a motion for summary judgment, the party opposing the motion must "present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994). The non-moving party must show that a trial-worthy issue exists and must point to specific facts that demonstrate the existence of an authentic dispute. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991). "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Furthermore, the Court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). Nonetheless, the Court must never "weigh the evidence and determine the truth of the matter." *Lipsett v. University of P.R.*, 864 F.2d 881, 895 (1st Cir.1988) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505), and "[n]o credibility assessment may be resolved in favor of the party seeking summary judgment." *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995). The Court may safely ignore "conclusory allegations, improbable inferences, and un-

---

**1.** In Puerto Rico, "trust" positions ("confianza") are non career positions lacking the civil service protection afforded to career positions, See P.R. Laws Ann. Tit. 3, §§ 1349–51 (1978). Trust employees, unlike their career

counterparts, may be discharged at will and without cause. *Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 n. 2 (1st Cir.1990) (*citing Rodriguez Rodriguez v. Munoz Munoz*, 808 F.2d 138, 140 (1st Cir.1986)).

supported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). "If, after this canvassing of the material presented, the district court finds that some genuine factual issue remains in the case, whose resolution one way or another could affect its outcome, the court must deny the motion." *Lipsett,* 864 F.2d at 895

## DISCUSSION

### A. First Amendment

■ It is well established that political patronage restrains core activities protected by the First Amendment, such as the freedom of belief and association. *Padilla–Garcia v. Rodriguez,* 212 F.3d 69, 74 (1st Cir.2000); *Berrios–Cintron v. Cordero,* 976 F.Supp. 110, 113 (D.P.R.1997). "The Supreme Court has held that the first amendment protects non policy makers from being drummed out of public service on the basis of their political affiliation or advocacy of ideas." *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 56 (1st Cir.1990) (*citing Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)); *Padilla–Garcia,* 212 F.3d at 74; *see also Rutan v. Republican Party of Illinois,* 497 U.S. 62, 75–76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). A two part burden shifting framework is used to evaluate claims of political discrimination. *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Padilla–Garcia,* 212 F.3d at 74.

■ To establish a *prima facie* case of political discrimination, a plaintiff must produce sufficient direct or circumstantial evidence to raise the inference that his political affiliation was a substantial or motivating factor behind the challenged adverse employment action. *Padilla–Garcia,* 212 F.3d at 74.; *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 66 (1st Cir.1993); *Rivera–Cotto v. Rivera,* 38 F.3d 611, 614 (1st Cir.1994). The burden then shifts to the defendant, who must establish by a preponderance of the evidence, that he would have taken the same action regardless of the plaintiff's political beliefs. *Padilla–Garcia,* 212 F.3d at 74. In addition to articulating a nondiscriminatory ground for the adverse employment action, the defendant bears the burden of proving that the he would have taken the adverse employment action regardless of plaintiffs' political affiliation. *Acevedo–Diaz,* 1 F.3d at 66. "Either this 'but for' causation test, or the defendant employer's *Mt. Healthy* defense ensures that a plaintiff-employee who would have been dismissed in any event on legitimate grounds is not placed in a better position merely by virtue of the exercise of a constitutional right irrelevant to the adverse employment action." *Id.; LaRou v. Ridlon,* 98 F.3d 659, 661 (1st Cir.1996). Summary judgment is only warranted if "defendants evidentiary proffer compelled the finding that political discrimination did not constitute a 'but for' cause for the demotion." *Acosta–Orozco v. Rodriguez–De–Rivera,* 132 F.3d 97, 103 (1st Cir.1997)(*citing Jirau–Bernal v. Agrait,* 37 F.3d 1, 4 (1st Cir.1994)). The defendant must show that the allegedly bona fide reasons for the adverse employment actions were sufficient by themselves to justify the decision. *AcostaOrozco,* 132 F.3d at 103.

■ "The evidence by which the plaintiff established her *prima facie* case may suffice for a fact finder to infer that the defendant's reason is pretextual and to effectively check summary judgment" *Padilla–Garcia,* 212 F.3d at 74. Evidence of a highly charged political environment coupled with the parties' competing political persuasions may be sufficient to show discriminatory animus, especially in an instance where a plaintiff was a conspicuous target for political discrimina-

tion. *Rodriguez–Rios v. Cordero*, 138 F.3d 22, 24 (1st Cir.1998); *Acevedo–Diaz*, 1 F.3d at 69. However, "merely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." *Correa–Martinez*, 903 F.2d at 58; *see also Rivera–Cotto*, 38 F.3d at 614 ("Without more, a non moving plaintiff-employee's unsupported and speculative assertions regarding political discrimination will not be enough to survive summary judgment"). What is required is a fact specific showing that a causal connection exists that links the adverse employment action to the plaintiff's politics. *Correa–Martinez*, 903 F.2d at 58. The plaintiff must raise a plausible inference that he was subjected to discrimination on the basis of his political views or affiliation. *Id.* "A plaintiff still will prevail if it is found that she would not have been fired but for her political affiliation." *Aviles–Martinez v. Monroig*, 963 F.2d 2, 5 (1st Cir.1992). The burden of persuasion is on the defendant to establish a *Mt. Healthy Defense.* Mere temporal proximity between the adverse employment action and change of administration is insufficient to create a genuine issue of material fact and establish discriminatory animus. *Id.; Acevedo–Diaz*, 1 F.3d at 66.

### 1. Jorge Mercado

█ Mercado fails to establish a *prima facie* case of political discrimination because he does not proffer sufficient evidence that his dismissal was related to his political affiliation. The evidence establishes that Mercado was a known member of the New Progressive Party (NPP) while his supervisors were members of the Popular Democratic Party ("PDP")(*See* Docket No. 95, Exhibit 3 at 5) but merely juxtaposing his political affiliation with that of his supervisors and stating that he was treated unfairly is insufficient to establish

a claim political discrimination. *See Correa–Martinez*, 903 F.2d at 58.

Moreover, defendants have articulated a legitimate nondiscriminatory reason for his dismissal, cashing a check made out to the NPP while performing his duties as a Tourism Official in violation of PRTC employee rules regarding conflict of interest. (*See* Docket No. 81, Exhibit 2 and Docket No. 95, Exhibit 9 at 39, ¶ 3). Mercado alleges that this reason was a fabrication and a disguise to hide the true motivation underlying his dismissal—namely, his political affiliation. Mercado, however, has failed to adduce even minimal facts to support his contention. Indeed, he has proffered no evidence that his political affiliation, rather than a pretextual violation of employee rules, was the real reason behind his termination.

The PRTC contends that Mercado was dismissed solely because he used his position at the PRTC to cash a check made out to a third party, notably a political party, at a casino and this constituted a violation of company policy by raising a conflict of interest and interfering with his oversight and supervisory functions at the PRTC. The evidence in the record confirms that while employees routinely cashed salary and diet checks at casinos, it was not routine to cash checks made out to third parties (*See* Docket No. 95 at Exhibit 3 at 7, 10–12). Mercado has failed to adduce even a scintilla òf evidence that this was ever done or that it otherwise does not constitute a violation of the personnel rules and regulations of the PRTC.

Furthermore, Mercado fails to contest the adequacy of the PRTC's stated reason for his dismissal. In his *Commentaries to Defendants Uncontested Facts* (Docket No 95 at ¶ 4), he states that "it is contested fact that M. Mendez as he claims in his sworn statement cashed the check. Mr. Luis Gonzalez, the Casino Director, ap-

proved and authorized the check to be cashed ... A cashier who changed the check was some other cashier and not M. Mendez who was not at the Casino at the time." Mercado supports none of these facts with depositions, affidavits, or other record references. Indeed, he has not offered any evidence that M. Mendez was not at the casino when the operative events took place and has not otherwise challenged M. Mendez's sworn affidavit. Mercado has also failed to submit any evidence whatsoever to support his arguments concerning Mr. Luis Gonzalez. Neither Mercado nor any of the defendants ever deposed Gonzalez, and he did not file a sworn affidavit stating his alleged version of the facts. Simply put, Mercado has put forth no evidence, other than his own conclusory allegations, to contest defendants' version of events surrounding Mercado's dismissal.

Furthermore, the employee manual clearly stated that a violation of the PRTC Personnel Regulations could result in dismissal (See Docket No. 95, Exhibit 9 at 46; Exhibit 4 at 15). Defendants have proven by a preponderance of the evidence that this reason was sufficient to warrant Mercado's dismissal.[2]

Accordingly, the Court dismisses Mercado's first amendment claim.

### 2. Angel Nazario

Because Nazario resigned from his position by seeking a transfer to the Municipality of San Juan, he must establish he was constructively discharged and that his resignation was not voluntary, as a component of his *prima facie* case.

■■■ The standard for proving a constructive discharge is that the "new working conditions would have been so difficult or unpleasant that a reasonable person in the employees' shoes would have felt compelled to resign." *Aviles–Martinez*, 963 F.2d at 6 (*citing Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir.1986)). "The standard is not triggered solely by an employees subjective beliefs; no matter how sincerely held." *Suarez v. Pueblo Int'l*, 229 F.3d 49, 54 (1st Cir.2000). The test is one of objective reasonableness. *Id.* "The constructive discharge standard does not guarantee a workplace free from the usual ebb and flow of power relations and inter-office politics." *Id.* (*citing Calhoun*, 798 F.2d at 561). "An increase in work requirements that does not surpass reasonable expectations will not suffice to sustain a claim of constructive discharge." *Suarez*, 229 F.3d at 55–56. (Finding that the key to a constructive discharge inquiry was whether plaintiff retained duties and emoluments appropriate to his rank, such as salary, benefits and title).

■■■ Nazario's allegations are insufficient to establish the he was constructively discharged or to establish a *prima facie* case of political discrimination. There is

---

**2.** The only aspect that gives the Court pause is the time elapsed between the check cashing and the time PRTC finally dismissed Mercado. The alleged incident whereby Mercado cashed a check made out to the NPP was in December of 1999, and he was not dismissed until June of 2002. (See Docket No. 81, Exhibits 2 & 11). Defendants are unable to explain why it took over a year to dismiss Mercado if that was the sole reason behind his termination, other than to state that an investigation was under way (See Docket No 81, Exhibit 4 at 15). Mercado, on the other hand, has also failed to submit any evidence of political strife or other discriminatory animus taking place during that time frame to prompt the PRTC to use the check cashing as a pretextual reason to terminate him. There is absolutely no evidence of comments directed at Mercado regarding his political beliefs, the change in administration or any other indication that his political affiliation was the real motive behind his termination.

no evidence that the actions allegedly taken against him were related to his political beliefs or affiliation. His only allegation was that the decision to have him and his personnel respond to a supervisor constituted a deliberate attempt to force him out of the PRTC. When there is no outright dismissal, the Court must "sift out the chaff of minor irritants and frustrations from the wheat of truly significant adverse actions" *Agosto–de–Feliciano,* 889 F.2d at 1214. Nazario simply alleges that having to respond to a superior made him feel humiliated. This, in and of itself, is insufficient to support a claim of constructive discharge. The new work conditions must "place substantial pressure on even one of thick skin to conform to the prevailing political view." *Id.* at 1218. Nazario does not allege that he had any political clashes with the newly appointed Director of Information Systems.

Furthermore, Nazario's salary or benefits were not in any way altered. Simply put, there is no evidence in the record that his new working conditions were unreasonably inferior to the norm for the position. *Id.* Nazario's bare allegations do not sustain that his new working conditions following the order that he respond to a supervisor were intolerable to the point of warranting his resignation. Nazario's subjective feeling of humiliation does not constitute an unduly burdensome circumstance, especially when his duties, salary or benefits were never compromised.

## B. Due Process

Plaintiffs' due process claims are independent from their first amendment claims, since the inquiries governing each are distinct. *Acosta–Orozco,* 132 F.3d at 104; *Arizmendi–Corales v. Rivera,* 176 F.Supp.2d 114, 120 (D.P.R.2001)(*citing Santiago–Negron v. Castro–Davila,* 865 F.2d 431, 436 (1st Cir.1989)) ("there is a distinct difference between a municipal employee's right to a due process hearing

on termination and the employee's first amendment right to ·be free from political speech and association").

■■■■ The Due Process Clause guarantees public employees the right to a pre-termination hearing. *See, e.g., Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). As a prerequisite to a due process claim, however, plaintiffs must have a constitutionally cognizable property or liberty interest. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Correa–Martinez,* at 53 (*citing Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). The question of whether a person has a constitutionally protected property interest is answered by an independent, extra-constitutional source such as state law. *See, e.g., Correa–Martinez,* 903 F.2d at 53 (*citing Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). Under Puerto Rico law, a career position is a constitutionally protected property interest. *Kauffman v. Puerto Rico Tel. Co.,* 841 F.2d 1169, 1173 (1st Cir.1988). Permanent and career positions are vested with a property interest in their continued employment however, trust positions or career position that were illegally hired are "neither invested nor entitled to the due process protections which inure to their legally hired counterparts" *Correa–Martinez,* 903 F.2d at 54 (*citing Rosario–Torres v. Hernandez–Colon,* 889 F.2d 314, at 319 (1st Cir.1989)).

### 1. Jorge Mercado

■■■ Mercado's position as Gaming Official Supervisor was clearly a career position that vested him with the right to a pre-termination hearing prior to his dismissal. An employee with a protected property interest in his employment is entitled, at a minimum, to "oral and written

notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Pouliot v. Town of Fairfield,* 184 F.Supp.2d 38, 48 (D.Me.2002) (*citing Cleveland Bd. Of Educ.,* 470 U.S. at 546, 105 S.Ct. 1487). The opportunity to respond must be meaningful. *Id. (citing Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). The pre termination hearing need not be elaborate as long as it offers the essential requirements of due process, namely, notice and an opportunity to respond. *O'Neill v. Baker,* 210 F.3d 41, 48 (1st Cir.2000); *Cotnoir v. University of Maine,* 35 F.3d 6, 10 (1st Cir.1994).

 Mercado was afforded a due process hearing but he failed to attend the same despite it being rescheduled on three separate occasions. On the third occasion, upon learning that plaintiff had yet again failed to appear, defendants cancelled the hearing but offered Mercado the opportunity to file written objections. This too, he failed to do. In essence, Mercado appears to allege, that the ultimate cancellation of his hearing and the opportunity afforded to him to object in writing deprived him of his procedural due process rights.

 It is well established that in order to have any meaning, a due process hearing "necessarily requires plaintiff's participation or consent to representation." *Maldonado Agueda v. Montalvo,* 826 F.Supp. 47, 52 (D.P.R.1993). The failure to postpone a hearing does not amount to a deprivation of due process if the plaintiff was represented by counsel at the hearing. *Barber v. Inhabitants of Town of Fairfield,* 460 A.2d 1001, 1006 (Me.1983); *cf. Maldonado–Agueda,* 826 F.Supp. at 51–52. Here, the PRTC afforded Mercado three opportunities to appear and he was represented by counsel. (*See* Docket No. 81, Exhibit 26) (letter from attorney Felipe Benicio Sanchez, specifically stating that

he has assumed the legal representation of Mercado and requesting a postponement of the hearing).

Furthermore, he was also give the opportunity to file written objections and to appeal the decision. Mercado failed to avail himself of these opportunities. He cannot now claim that he was denied due process of law when all that due process guaranteed him was an opportunity to present his side of his story. It is also notable, that on the last occasion plaintiff's attorney failed to present any medical evidence that would justify a further continuance.

The Court finds that the PRTC gave Mercado ample and adequate opportunity to present his side of the story. *O'Neill,* 210 F.3d at 48. The Court finds that in his case, Mercado repeatedly chose not to avail himself of the process given to him, but that this process was consonant with that guaranteed by the due process clause. *Cotnoir,* 35 F.3d at 7. Mercado's repeated failure to present his side of the story had nothing to do with an inadequacy of due process, but rather his own failure to attend or otherwise present his case. Accordingly, the court dismisses his due process claims.

**2. Angel Nazario**

 As has been previously discussed, Nazario was not constructively discharged but rather voluntarily quit his career position at the PRTC. Nazario voluntarily gave up his property interest in that position and, as a consequence, lost any due process right he may have had to a hearing. Accordingly, Nazario's due process claims are hereby dismissed.

**C. Qualified Immunity**

 Defendants in their personal capacity also allege they are entitled to qualified immunity. Qualified immunity

shields government officials performing discretionary functions from civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right which should have been known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Qualified immunity seeks to ensure that defendants 'reasonably can anticipate when their conduct may give rise to liability' by attaching liability only if '[t]he contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *United States v. Lanier*, 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). The Supreme Court has emphasized that a § 1983 plaintiff must allege a violation of a clearly established right secured by the Constitution or some other federal law. *Camilo–Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir.1998).

Because plaintiffs here have been unable to allege a claim of political discrimination, the Court need not go on to determine whether the right was "clearly established" or whether the state officer would have understood that the challenged conduct violated the plaintiff's clearly established rights. If no violation of a clearly established constitutional right is found, then the analysis halts because "there is qualified immunity." *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 187 (1st Cir. 1998).

### CONCLUSION

Accordingly, defendants' motion for summary judgment is GRANTED and this case is dismissed with prejudice.

IT IS SO ORDERED.